FILED

98 NOV 20 PM 4:03

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

NOV 20 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PERRY WOOD, individually )
and on behalf of all others )
similarly situated, )
)
    Plaintiff, )
)
vs. ) CIVIL ACTION NUMBER
)
GOVERNOR GUY HUNT, et al., ) 87-C-2182-S
)
    Defendants. )

**MEMORANDUM OPINION ON CLAIM OF TIMOTHY FOWLER**

The Consent Decree requires the revision of job descriptions in the defendant University of Alabama in Birmingham ("UAB")'s Division of Facilities Management "for the purpose of listing the job duties and the skills and abilities required for each position as precisely as possible to produce and facilitate a selection process that is as objective as possible." Consent Decree, § 1. B., p.3. The revised job descriptions should eliminate "criteria which possibly have disparate impact on black applicants or employees or which tend to perpetuate past patterns of racial stratification in the workforce...." Id.

Timothy Fowler claims that although he is classified as a Maintenance Warehouse Worker, he actually performs the job of Maintenance Material Specialist ("expediter"). He contends that UAB's failure to classify him as an expediter violates its obligation under the Consent Decree.

For the reasons that follow, the court finds that his claim is meritorious.

I

The expediter position job classification has historically been held by white employees exclusively.

When the Consent Decree was entered in 1990, the educational requirements for the expediter job were high school graduation and two years of college or its equivalent, supplemented by two years of experience in material handling.

The November 5, 1992, revised job description for this position raises the educational requirement to an accredited baccalaureate degree in business or a related field. Three years of verifiable experience in material handling may be substituted for two years of college.

The Court judicially notes that according to the 1990 census, in Jefferson County, Alabama, the percentage of whites holding bachelor's or higher degrees (23.6%) is more than twice that of black (11.3%). 1990 Census of Population: Social and Economic Characteristics: Alabama, 1990 CP-22, tbls. 8 and 9. More likely than not, the discrepancy between the percentages of Jefferson County, or for that matter, UAB workforce, blacks and whites holding baccalaureate degrees in business or related fields is even greater.

The UAB expert has opined that a college education is not a necessary qualification for the successful performance of the expediter job. Plaintiff's Exhibit ("PX") 3, p. 18. Her opinion is buttressed by the undisputed fact that none of the incumbent white expediters have college degrees -- in business or any other field.

The imposition of the college education requirement for the expediter job clearly defies UAB's obligation to eliminate "criteria which **possibly** have disparate impact on black applicants or black employees or which tend to perpetuate past patterns of

3

racial stratification in the workforce...." Consent Decree. This new educational qualification is the kind of facially neutral, non-job related, "built-in headwind" spoken of by the United States Supreme Court in *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S. Ct. 849 (1971), and precisely the kind of irrelevant criterion which the Consent Decree was designed to avoid. The college education requirement has the double-barreled effect of disparate impact on class members and perpetuation of racially stratified jobs at UAB.

Fowler's claim that the college education requirement violates the Consent Decree must be sustained.

II

Fowler is a high school graduate. He attended and completed a welding course at a vocational school in the 1973-74 school year. He took courses in electronics and carpentry at Lawson State Technical College in the 1975-76 and 1976-77 school years. He completed a 1984-85 management training program offered by his then-employer 84 Lumber Company. While employed at 84 Lumber, Fowler's duties included "expediting, procurement of

supplies and materials for contractors, inventory control." PX 2, p.8.

Fowler is a licensed contractor; and for six years he operated a construction company where material expediting and coordinating were a regular part of the business.

Fowler was employed by the defendant in December 1989. Classified initially as a carpenter, and reclassified as a material coordinator in March 1993, Fowler has worked in material handling since his initial employment by UAB. See *Id*.

III

UAB defends its decision not to re-classify Fowler as an expediter on the basis of a job audit performed in February 1993. The job auditor, UAB employee Alesia M. Jones, concluded

> Tim Fowler's duties and responsibilities match his current title and job description. With the exception o the first paragraph under the position summary, Mr. Fowler's duties are exactly as depicted in his current job description. The salary range appears appropriate for the level in which this job is currently functioning. I recommend making no change to this job at this time.

DX 5, September 21, 1993, memo from Alesia M. Jones to Brooks H.

Baker, p. 2. Copies of the job description for expediter and material coordinator are attached to this opinion.

In preparing her audit, Jones interviewed Fowler for an hour on one occasion; and on another occasion she observed his work environment for a like period of time as he performed his work. In the interview, Fowler described the jobs he typically performs and the amount of time he expends in performing the various expediter job duties. Jones recalls that Fowler told her that he basically works as an expediter. PX 3, pp. 19-21. Jones has no independent judgment of how much time Fowler spends performing various functions on his job. PX 3, p. 31. In her judgment, the "main discrepancy" between Fowler's job duties and those of the expediters is that

> [t]he Expeditors are responsible for a wide variety of purchasing and buying functions that encompasses all of facilities management. Whereas, with the Material Control Specialist, they are very limited purchasing functions. [the Material Control Specialist is responsible for] getting a LPO[1] and getting a requisition walked through, or calling a vendor periodically, or its very limited in comparison with the Expeditors.

*Id.*, pp. 22, 23. The expediters, rather than the control

---

[1] An LOP is a limited purchase order, utilized for purchases of less than $300.

specialists, are responsible for the purchasing functions; they are comparable to university buyers, in her view. *Id.*, pp. 39, 41.

In her audit report, Jones concluded that Fowler "performs very <u>limited purchasing functions</u>." PX 5, *Id.* (emphasis original). Her deposition confirms her belief that Fowler "does no buying." *Id.*, p. 16. She agreed that Fowler otherwise performs the job duties of the expediter. *Id.*, pp. 26-31.

IV

Contrary to Jones' unsupported opinion, the evidence clearly establishes that Fowler is regularly engaged in major purchasing functions in the Hospital Department where he works. The court credits his testimony:

> ...I receive requests from supervisors and mechanics. At the time I receive the request, then I start to search for the materials that they are requesting from different vendors. So I have to select a vendor to-that would provide that material for me. At that time I get prices and availability from those vendors as to when they can deliver this, and also as to the pricing because we want to-we want to pay the least for the materials that we can. So I do that. After that is done, then I go forward with it and write it on a requisition and then I get the appropriate signatures for that requisition. And then I send it through

>       the purchasing process so that we can go out
>       and get the material by truck driver or they
>       would deliver the material to our supply room
>       or to the Receiving Department.

Transcript of July 20, 1994, Hearing ("TR") 26. Certain types of accounts, particularly the accounts designated "70" and "88" (virtually all of which involve purchases in the thousands of dollars) are not processed through the classified expediters. For purchases under those specific accounts as well as others, Fowler is in fact the expediter. Roughly 85% of his time is expended in writing up requisitions, talking to and negotiating with vendors, and procuring materials. In the six months preceding the evidentiary hearing, Fowler had written over 1500 requisitions. Tr. 27-28.

   Adam Jordan, white, a classified expediter, testified that Fowler actually performs the job of expediter. Jordan had previously worked the precise job now being held by Fowler; he is therefore in a unique position to compare its functions to those of classified expediters.

   Plaintiff's Exhibit Six reflects UAB purchase requisitions in the six-month period preceding the evidentiary

hearing. For a substantial number of those requisitions, Fowler is the only listed UAB personnel. The documents embodied in this exhibit completely rebut Jones' opinion that Fowler "does no purchasing" and performs only limited purchasing functions.

Moreover, Plaintiff's Exhibit Two reflects that Fowler is engaged in UAB purchasing in a major way — actually writing up purchasing orders (PX 2, pp. 17, 27, 34, 39, 41, 57, 63, 64, 69, 71, 73), signing requisition forms as the requesting official (*id.*, pp. 17, 31, 71), and receiving purchases (*id.*, pp. 23, 24, 25, 26, 30).

UAB failed to adduce any credible evidence to call into question Fowler and Jordan's testimony that Fowler performs the job of expediter, notwithstanding his material coordinator job classification. UAB records, embodied in PX2 and PX 6, corroborate their testimony.

### Conclusion

The court therefore finds that at all relevant times since his December 11, 1992, application for a transfer to the expediter job, Fowler should have been classified and paid as an expediter.

The failure to do so violates the defendant's obligations under the Consent Decree. By separate order, the defendant UAB will be required to forthwith classify Timothy Fowler as an expediter, and to pay him the difference between the amount he would have been paid had he been so classified on December 25, 1991.[2]

DONE this 20th day of November, 1998.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON

---

[2] UAB is being required to simply reclassify Fowler and to pay him for his work as an expediter. The position awarded to Angela Cosey in February 1993 is unaffected by the disposition of Fowler's claim.

10